# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. '22 MJ4035
 )
Black Nokia Cellphone )
Seized as FP&F No. 2023565800000301 Line Item 0002 )
("Target Device 1") )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Giancarlo Lugo, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Giancarlo Lugo, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: 11/03/2022

*Judge's signature*

City and state: San Diego, California     HON. Jill L. Burkhardt, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-1

PROPERTY TO BE SEARCHED

Black Nokia Cellphone
Seized as FP&F No. 2023565800000301 Item 0002
(**"Target Device 1"**)

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 and A-2, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **October 2, 2022, to November 2, 2022**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.

# AFFIDAVIT

I, Giancarlo Lugo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

>Black Nokia Cellphone
>Seized as FP&F No. 2023565800000301 Item 0002
>**("Target Device 1")**

>Black Motorola Cellphone
>Seized as FP&F No. 2026565800000301 Item 0003
>**("Target Device 2")**

2. The **Target Devices**, as further described in Attachment A-1 and A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

3. The requested warrant is related to the investigation and prosecution of Brayan Yair ROBLES-Vargas for transportation of illegal aliens within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

1

## TRAINING AND EXPERIENCE

5.      I have been employed by the USBP since 2008 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for ten years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

6.      My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

7.      During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

8.      Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle

aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

9. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media,

or messaging applications when contact is lost with the driver after an apprehension has occurred.

10. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

11. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a.    tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.  tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

12. On November 2, 2022, Acting Watch Commander R. Gaus, Supervisory Border Patrol Agent C. Mansfield, and Border Patrol Agent J. Enriquez were performing their assigned duties in Imperial Beach Border Patrol Station's area of responsibility. Agent Enriquez was operating an Agency issued marked Border Patrol vehicle with emergency lights and siren operational.

13. At approximately 6:15 AM, Joint Harbor Operations Center (JHOC) personnel observed two jet skis travel southbound toward Mexico. JHOC personnel notified agents in the field that the jet skis appeared to be leaving the coastal region of Imperial Beach, California. Agent Gaus utilized an infrared camera scope, controlled at the Imperial Beach Station, to scan the area. Agent Mansfield responded to the area and utilized his handheld thermal optic and began scanning for heat signatures consistent with human shapes. Agent Mansfield observed an individual walking north of his location. Agent Mansfield walked north in the direction of the individual and observed the heat signature again near Cortez Avenue. The individual exited the beach in the direction of Seacoast Drive.

14. At approximately 6:35 AM, Agent Mansfield observed a red BMW drive south on Seacoast Drive, turn around near Encanto Avenue on Seacoast Drive and then drive north. Agent Mansfield observed the vehicle slow down. Agent Mansfield notified agents of his observations and relayed the last two numbers of the BMW's license plate.

15. At approximately 6:40 AM, Agent Mansfield observed an individual run east on Cortez Avenue onto Seacoast Drive. The individual ran behind the BMW and entered the vehicle through the passenger side. Agent Gaus also observed this via the infrared scope he was operating and relayed his observations. Agent Enriquez responded to the location.

16. Agent Enriquez observed a vehicle turn eastbound on Imperial Beach Boulevard from Seacoast Drive. Agent Enriquez observed the last two numbers of the license plate matched the description and performed a vehicle records check through San Diego Dispatch. Agent Enriquez performed a vehicle stop of the BMW by activating his emergency lights and siren. At approximately 6:42 AM, the BMW yielded at Imperial Beach Boulevard and Connecticut Street. Agent Enriquez approached the vehicle and observed the driver, later identified as the defendant, Brayan Yair ROBLES-Vargas, with a phone in his hand with a messaging application open and observed an individual sitting the passenger seat. The passenger was an individual later identified as material witness, Martin SOLORZANO-Ruiz. Agent Enriquez identified himself as a Border Patrol Agent and conducted an immigration inspection of both ROBLES and SOLORZANO. ROBLES and SOLORZANO both stated they are citizens of Mexico without immigration documents allowing them to remain in the United States. Agent Enriquez observed SOLORZANO had wet clothing on his body. Agent Enriquez asked ROBLES if he knew who the passenger was. ROBLES replied in the Spanish language he had just picked him up 10 minutes prior to being pulled over and did not know who he was. Agent Enriquez asked SOLORZANO if he had been picked up by ROBLES and he said "yes." During the arrest SOLORZANO also admitted to being dropped off by a jet ski that had crossed the Maritime

6

Border from Mexico. Agent Enriquez asked SOLORZANO if he knew ROBLES, SOLORZANO admitted to not knowing ROBLES. At approximately 6:45 AM, Agent Enriquez placed both occupants of the BMW, the defendant ROBLES and material witness SOLORZANO, under arrest.

17. At the time of Bryan Yair ROBLES-Vargas arrest, a black Nokia cellphone, (**Target Device 1**) was found in ROBLES' hand, and a black Motorola cellphone (**Target Device 2**) was found in the vehicle under ROBLES' seat. Upon apprehension, ROBLES claimed ownership of **Target Device 1**. **Target Device 1 and Target Device 2** were subsequently seized.

18. Defendant Brayan Yair ROBLES-Vargas was read his Miranda rights. ROBLES stated he was willing to answer questions without an attorney present. ROBLES stated that on today's apprehension he was instructed by an individual to drive to Imperial Beach to pick-up an undocumented immigrant hiding in the area. ROBLES stated the individual coordinated the pick-up location via cell phone between him and Martin SOLORZANO-Ruiz. ROBLES stated the individual was going to pay him $200.00 USD and deduct $500.00 USD from money he owes the individual. ROBLES stated he was supposed to pick-up SOLORZANO and drive to Murrieta, California, but they were pulled over and arrested by Border Patrol. ROBLES was asked to elaborate more about the debt. ROBLES claims the individual smuggled him for a fee of $8,000 USD, in August 2022, but he did not have the money to pay the individual. ROBLES began to work for the individual as a load driver, however, after successfully picking up and dropping of four separate groups of illegal immigrants around the Otay Lake area, he was arrested and deported by Border Patrol in September of 2022. ROBLES then stated that for every successful load, he was making around $500.00 to $900.00 USD. ROBLES stated after being removed in September of 2022, he was illegally smuggled again by the individual three weeks ago. ROBLES stated since returning he has successfully picked up six separate

groups of illegal immigrants around the Otay Lake and Donovan Prison areas. ROBLES claimed to have made around $9,000.00 USD working for the individual as a Load Driver. ROBLES admitted to being in the United States illegally.

19. Material witness Martin SOLOZARNO-Ruiz stated he is a citizen of Mexico without immigration documents allowing him to enter or remain in the United States legally. SOLORZANO stated he made smuggling arrangements with a smuggler for a fee of $14,000 USD. SOLORZANO stated he stayed at the smuggler's house for three days before today's apprehension. SOLORZANO stated the smuggler sent him on an Uber to the Jet-Ski's location near Rosarito, Mexico. SOLORZANO stated upon arrival he was escorted by three adult males to the Jet-Ski. SOLORZANO stated was a second Jet-ski but had no passenger. SOLORZANO stated both Jet-Skis departed at the same time, both Jet-Skis stopped, and he was instructed to mount on the other Jet-Ski. SOLORZANO stated that after switching Jet-Skis, both continued north and once parallel to some bright lights, only the Jet-Ski that he was on pulled in to shore, operator instructed him to dismount and to turn on his location on his cell phone.

20. SOLORZANO stated immediately after dismounting he ran toward the street and concealed himself behind a truck. SOLORZANO stated while hiding he was informed by a smuggler to be on the lookout for a red vehicle. SOLORZANO stated while on the phone with the smuggler, he observed a red sedan going south and at the same time the smuggler told him the red sedan was going to turn around to pick him up. SOLORZANO stated the red Sedan stopped directly across from his location. SOLORZANO stated while running toward the car, the driver told him to slow down. SOLORZANO stated he entered the red sedan and was immediately told to calm down by the driver. SOLORZANO stated they drove away and after a few minutes they were pulled over by a Border Patrol Vehicle, arrested, and transported to the Imperial Beach Station.

21. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that Bryan Yair ROBLES-Vargas was using the **Target Devices** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as Bryan Yair ROBLES-Vargas to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on **October 2, 2022, through November 2, 2022.**

## METHODOLOGY

22. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of

9

the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

25. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

**CONCLUSION**

26. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

27. Because the **Target Devices** were seized at the time of Bryan Yair ROBLES-Vargas arrest and have been securely stored since that time, there is probable cause to

believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **October 2, 2022, through November 2, 2022**.

28. Accordingly, I request that the Court issues warrants authorizing law enforcement to search the items described in Attachment A-1 and A-2 and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*/s/ Giancarlo Lugo*
Giancarlo Lugo
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this __3rd__ day of November 2022.

*/s/ Jill Burkhardt*
Hon. JILL L. BURKHARDT
United States Magistrate Judge

## ATTACHMENT A-1

PROPERTY TO BE SEARCHED

Black Nokia Cellphone
Seized as FP&F No. 2023565800000301 Item 0002
(**"Target Device 1"**)

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 and A-2, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **October 2, 2022, to November 2, 2022**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.